Garland, J.*
The petitioners, as the heirs of Amand Brous-sard deceased, allege that they are the owners and proprietors of a tract of land at a place called Fausse Pointe, in the parish of St. Martin, having a front of forty arpents on the back lines of the tracts [routing on the bayou Tache, by a depth of forty ar-pents, bounded above by the land of Francois Louvieres, and below by vacant land. Their claim is based on a certificate or recommendation, dated December 31, 1800, signed by De Blanc, the then Commandant of the post of Attakapas, in favor of their ancestor, confirmed by an act of Congress, appproved the 5th of February, 1825, to the full extent claimed; and said claim has been located by a regular survey, made on the 2d April, 1832, by a duly authorized surveyor, and approved by the Surveyor General of the United States. They say that they have been disturbed in their possession of the premises by the defendants, who have taken possession of a part of said land, and set up title to it, although they have none, and have, in various ways, slandered the title of the petitioners to their great damage. They pray to be quieted in their title and possession of the land claimed, that the defendants be evicted, and pay damages, rents and profits.
The answer of the defendants denies the allegations in the petition, and specially avers, that the plaintiffs have no title to the premises occupied by them. They say that they are the bona fide owners and proprietors of a tract of land situated at Fausse Pointe, in the parish of St. Martin, having sixteen arpents front, on the back line of a tract of land formerly owned by Francis Gonsoulin their deceased ancestor, with a depth of forty arpents, commonly called a double concession, said tract being bounded on one side by land formerly claimed by Amand Broussard, and on the other by land claimed by Joseph Broussard. Said tract of land was granted to Francois Gonsoulin, the ancestor of .the defendants, by the Spanish government, in the year 1802, and they hold by regular conveyances from him, or his *3 succession. They say that they have been in peaceable and quiet possession of the land for more than thirty years; wherefore they plead the prescription of ten, twenty, and thirty years, having, as is alleged, just titles. The respondents further say, that the names of a portion of the plaintiffs have been used without their consent and approbation, and that they have renounced all claim to the premises described in the petition. They also say, that they hold the land in their possession under titles derived from Francois Gonsoulin, or his heirs, and they pray that they maybe summoned in warranty, and judgment rendered against them in case of eviction.
On the trial below, the plaintiffs offered as evidence, the petition, or requite, of Amand Broussard, addressed to Louis Charles De Blanc, Commandant of the post of Attakapas, stating that he is the owner of a tract of land fronting on the bayou Tache, with a depth of forty arpents, upon which there is no wood ; and as the land in the rear is vacant, ho prays that it may be granted to him, according to the same limits. On the 31st December, 1800, the Commandant aforesaid, certifies to the Intendant General, that, according to the certificate of two witnesses, and of the Surveyor of the post, Francois Gonsoulin, and according to the last regulations of the Intendant, the forty arpents front, in the rear of the ordinary depth of the petitioner, are vacant, and that as he, Amand Broussard, was one of the most ancient Acadians of the post, in good circumstances and charged with an increasing family, he recommends that the land be granted to him, and that the Surveyor be directed to make a figurative plan, and continue his operations to obtain a title. This requite and certificate were never presented to the Intendant or any other officer of the Spanish Governor, nor further acted on, until after the cession of Louisiana to the United States, when, about the year 1813, it was presented at the land office at Opelousas, for confirmation, and on the 30th December, 1815, favorably reported on, and finally confirmed by an act of Congress, approved February 5th, 1825. The plaintiffs are the heirs of Amand Broussard, who died in the year 1817 or 1818.
The claim of Amand Broussard was first located under an order of the principal deputy surveyor of the south-western district *4 of Louisiana, by James L. Johnson, a deputy surveyor, on the 2d February, 1827, 'and approved by Gideon Fitz, Surveyor General of public lands south of Tennessee, on the 24th of August, 1833. This location did not interfere with the claim of the defendants at all, and gave Broussard only 947T%8T acres, instead of 1354 acres; his confirmation calling for 40 arpents front by 40 in depth. Why no more was given, the parol evidence will explain. On the 2d April, 1832, William B. Jackson, also a deputy surveyor of the United States, acting under an order of the Surveyor General of the United States for the State of Louisiana, made another location of Amand Broussard’s claim; and, by his survey, 1354 acres were allowed to it, and thus the land claimed by the defendants was included within its limits. This survey was also approved by H. B. Trist, Surveyor General; at what precise date does not appear, but certainly on or before the 15th February, 1834. See plat K and No. 3, in the record. Why two locations of the same claim were made so widely different, is not explained.
On the 10th December, 1802, Framjois Gonsoulin presented his petition, or requéte, to the Commandant of the post of Attaka-pas, stating that he had obtained a title to the front lands on the bayou Tache, for fourteen arpents front on each side of it, and that he had adjoining his tract, on the lower side, another piece of land; and considering the small quantity of wood thereon, he prays that according to the regulations, the double depth of said land on the east bank only, as well as the whole quantity of the adjoining tract, be granted to him, in order to form altogether a front of sixteen arpents on the back line of the front tracts, with a depth of forty arpents. On this application, Louis O. De Blanc, the Commandant, certifies, that., it appearing from the regulations of the Governor General, that the inhabitants had a right to the double depth of their concessions, and as the petitioner had used all the formalities, from which it appeared that the land he solicits belongs to the domain, and had a large family (twelve children,) the double depth is granted, as applied for in the memorial, having sixteen arpents front by forty in depth, and he is directed to take possession, so as to obtain a title in form. This claim was never presented to the United States officers for confirma *5 tion, until about the year 1836 ; it was favorably reported on, and finally confirmed by an act of Congress, approved July 6th, 1842, but has not yet been finally located.
The parol evidence shows that Amand Broussard, at an early period, but when is not definitely stated, had a cabin and kind of well on the upper part of the land he claims, near to Louviere’s line. The cabin was sometimes occupied by his slaves. About the year 1805, or 1806, he proposed to have a survey of his claim made by Evan Bowles, a surveyor. They commenced to run the frontline at the lower boundary of Louviere’s tract, and after proceeding somethinglike twenty arpents, or more, Franpois Gon-soulin disputed the right of Broussard to proceed further down. A post was planted at the place where Bowles stopped, in consequence of Gonsoulin’s opposition, and no side or back lines were then run. Broussard’s cabin and well were above this post, and There is no evidence that he ever occupied any land below it. ■He died in 1817, or 1818, and there is no proof of the land being-occupied since. When James L. Johnson made his survey, he measured about eighteen arpents front for Amand Broussard, and nine arpents front for Edouard Broussard, his son, and he went no further. Who was present when Jackson made his survey, except himself and his chain carriers, is not shown.
The proof of occupancy and cultivation on the part of Gonsou-lin, the ancestor, and his children, on the land claimed by the defendants, is ample. • Lewis Moore says, he was on the land in June, or July, 1804, with some other persons. The sons of Fran-pois Gonsoulin were then there ; had a house, a field, a pen, a well, and other things that indicated a permanent establishment. The house was in or near the woods, perhaps seventy arpents from the bayou Tache. The high water subsequently drove them into the prairie, some twenty arpents nearer to the bayou, where defendants now live. NeuvilleDeclouetsays, that in the year 1805, he was at the place where the young Gonsoulins were settled, and that he lived near to them: The place when he first saw it, appeared to have' been established some time before. They were on the b'ack concession, and have never quited it, although they removed from near the woods into the prairie. Desiré Le Blanc says that, in 1809, he purchased of Franpois Gonsoulin, twelve *6 arpents front by forty deep, of the tract fronting on the bayou Tache. There was then a cabin on the second concession. Other witnesses speak of the settlement at other 'periods, as far back as 1810, 1811, 1812, and other years. Some of the witnesses say, that they never saw any improvements made by the Gonsoulins, until about the years 1810, 1811, or 1812; but the weight of the testimony is in favor of the settlement having been made much earlier. The testimony of Lewis Moore and Declouet is positive as to their being on the land in 1804 and 1805. The testimony of Desiré Le Blanc goes to confirm their statements. They all state circumstances calculated to impress the fact upon their recollection. Moore says that he was at the house the first year he came to the country. Declouet fixes his date from the feet of his going to live in the big woods in 1805, near to the defendants; and Le Blanc’s recollection is fixed by his purchase of a part of the Gonsoulin tract of land. Nearly all the other witnesses differ as to the dates when they saw the improvements, which shows how uncertain their recollections are as to so ancient an establishment. Lewis Moore mentions a circumstance, which, in some measure, accounts for the improvement not being generally seen. The house was on the edge of the woods, about seventy arpents from the bayou Tache, and the grass then grew very rank in that quarter, as high as the head of a man on horseback, and it was difficult to see the house from the road. Somewhere about the year 1810, the Gonsoulins were driven into the prairie by the high water, and then their establishment was plainly seen and well known. It is possible that some of the witnesses supposed that that was their first improvement. The principal residence of Francois Gonsoulin was on the front tract, and the place in the rear was occupied sometimes by one or more of his sons, and then by some others.
It is admitted that the defendants are vested with all the title Francois Gonsoulin had to the land, and his title to the front tract on the bayou is not disputed.
By a reference to the original requéte of Amand Broussard, it does not appear with any certainty, what quantity of land he wished the Spanish officers to grant him, nor does the certificate of the Commandant fix it. When Gonsoulin applied for his *7 double depth, about two years after Broussard’s application, the Commandant certified that the land was vacant. When Bowles attempted to make a survey, about 1806, of Broussard’s claim, Gonsoulin then objected to his going beyond a certain point, and stopped him. A post was then planted ; and there is no evidence that Broussard ever in his lifetime, claimed the land below it. He certainly never occupied it, and Gonsoulin did. In 1827, when Johnson made a location of the claim, it was not surveyed so as to interfere with the defendants, and no right seems to have been preferred by the plaintiffs, until after Jackson’s survey, in 1832. It is true, that the United States confirmed the claim for forty arpents front, by the same depth ; but that amounts to no more than a relinquishment on the part of that government of all its right to the land in favor of Broussard, but deprived the defendants of no right they had, for' they have a relinquishment in their favor of the same kind.
According to the customs and usages of the Spanish government, a double concession could only be granted in the rear of the front tract, and Broussard asked for no more in his requéte. He says that the land in the rear is vacant, and prays that it be granted to him “ suivent les mémes limites.” This certainly does not entitle him to take the land in the rear of Gonsoulin’s front tract, and we do not believe it was ever intended by the Spanish authorities that he should do so.
The application of Broussard for the land he solicited of the Spanish authorities, and the certificate of the Commandant that it was vacant, &c., is older than the application of Gonsoulin; but neither was ever presented to, or approved by, the Intendant of the province, and no title passed to either, from the act of the Commandant. That could only be perfected subsequently by the possession of the parties, and the action of Congress. By it, both titles have been confirmed, and possession and cultivation by the defendants, and their ancestor, are proved most fully, and none is shown on the part of the plaintiffs or their ancestor; therefore the doctrine established by this court in the case of Gonsoulin's heirs v. Brashear (5 Mart. N. S. 33) will apply. It was held in that case, that a younger title, with actual possession and cultiva *8 tion for a number of years, would prevail over an older tille where no possession was proved.
It also appears to us, that the plea of prescription must prevail. This suit was commenced on the 13th of April, 1835; the possession of Gonsoulin is shown to have commenced in 1804, and it has been open and continuous ever since. He had the permission of the Commandant to take possession of the land to the extent of sixteen arpents front by forty in depth ; he always claimed to possess to that extent; and, we think, his vendees and heirs ought not now to be disturbed.

Judgment affirmed.

 Simon, J. having been counsel in this case, did not sit on its trial.